**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1039-23

STATE OF NEW JERSEY,

     Plaintiff-Defendant,

v.

CURTIS L. JONES, a/k/a
CURTIS J. JONES, CURTIS
LEE JONES, and RONNIE
JONES,

     Defendant-Appellant.

_____

> Argued September 9, 2025 – Decided September 24, 2025
>
> Before Judges Susswein, Chase and Augostini.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 18-06-0936.
>
> Joshua M. Nahum argued the cause for appellant (Law Offices of Alan L. Zegas, attorneys; Alan L. Zegas and Joshua M. Nahum, on the briefs).
>
> Hudson E. Knight, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex

County Prosecutor, attorney; Anthony J. Robinson, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Following a jury trial, defendant was convicted of second-degree possession with intent to distribute heroin, N.J.S.A. 2C:35-5(a)(1), and third-degree possession of suboxone, N.J.S.A. 2C:35-10(a)(1). The charges stemmed from a narcotics investigation that culminated with the seizure of 747 wax folds of heroin being recovered from the car defendant was driving. He was sentenced to an aggregate fifteen-year term of incarceration with a seven-and-a-half-year period of parole ineligibility.

Based on our review of the record and the applicable legal principles, we affirm defendant's convictions and sentence of fifteen-years but remand for the trial court to clarify whether an additional discretionary parole ineligibility term under N.J.S.A. 2C:43-6(b), was warranted in addition to the five-year mandatory parole ineligibility under N.J.S.A. 2C:43-6(f).

I.

We glean the facts from the suppression hearing and subsequent jury trial conducted over several days in the Fall of 2022.

2

At the suppression hearing, Detective Scott Tallmadge of the Somerset County Prosecutor's Office ("SCPO") Organized Crime and Narcotics Task Force testified that in February 2018 he received information from a confidential informant ("CI") that defendant was distributing heroin within Somerset County. Information previously supplied by the CI had led to arrests and charges of other people.

As a result, SCPO arranged a controlled buy of heroin from defendant in Franklin Township, Somerset County. The SCPO detectives surveilled the CI in a parking lot interacting with defendant. The CI entered defendant's vehicle, a BMW, and during the debriefing with the SCPO, provided a quantity of heroin he purchased using the money that detectives had provided the CI to purchase drugs.

The following week, the SCPO was informed by the CI that defendant had a large quantity of heroin in his car. Another controlled buy was arranged, but defendant changed the location from a location in Somerset County to a strip-mall in South Plainfield, Middlesex County.

Detective Tallmadge testified that the South Plainfield Police Department was notified of the investigation but did not respond. Officers from the SCPO went to the South Plainfield strip-mall where they observed defendant

3

A-1039-23

wandering around the parking lot. Detectives approached defendant and explained to him that they were conducting a narcotics investigation. Defendant was asked if they could search his car, but he declined, stating the car belonged to his wife. Defendant was handcuffed and placed in the back of an undercover police car.

A K-9 unit that was part of the investigation team arrived at the scene within five to ten minutes. The K-9 positively alerted to the presence of narcotics at the rear passenger side door. Detective Tallmadge explained to defendant that they would be applying for a search warrant, whereupon defendant stated he would give consent to search the vehicle. Defendant was read a consent to search form, which he then signed. An audio recording of the detective reviewing the consent form with defendant was played for the court.

A search of the vehicle revealed a light brown plastic Home Depot bag, in the center console cup holder area, with a bathroom fixture and a quantity of heroin. Tallmadge testified that the heroin was packaged in bricks with approximately 750 bags of heroin. Additionally, one pill of oxycodone was found in the cup holder. A search of defendant's person revealed three suboxone sublingual films and $901 in cash. Defendant was transported to a police station and released on a complaint-summons.

A-1039-23

Defendant testified at the suppression hearing. He said he was the sole occupant of his wife's vehicle and was the only one who had access to it when he arrived at the strip mall to look for a bathroom. After using a bathroom in a laundromat, he went to a convenience store. He stated that when he left the convenience store, he was approached by police officers who told him they were conducting a drug investigation. Defendant stated he was arrested and a blue pill was taken from his person. He then recounted that he was asked if law enforcement could search his vehicle and he said no. He testified that after Detective Tallmadge informed him they were going to apply for a search warrant, he granted consent to search the vehicle. Defendant alleged he didn't know a K-9 had arrived and had a positive reaction for drugs.

At the conclusion of the suppression hearing, the court found Detective Tallmadge was credible and defendant not credible. The court then denied defendant's motion to suppress, finding valid consent was obtained by the SCPO.

At trial, detectives and a forensic scientist from the New Jersey State Police Lab testified for the State. Detectives testified that they conducted surveillance at a strip mall and observed defendant behaving suspiciously. After stopping defendant, obtaining consent, and searching his car, they found 747

5

wax folds of heroin and other drugs, plus cash. The forensic analysis confirmed the substances. An expert testified about drug user habits and packaging.

The defense called Markeye Boyd. Boyd testified that he is defendant's cousin and refers to him as an uncle. He also testified that in 2014 he was convicted of possession with intent to distribute heroin and possession of cocaine, and that in 2012 he plead guilty to possession of heroin. He explained to the jury that in 2006 he had another conviction for contempt and that in 2005 he had a conviction for aggravated assault. Lastly, he stated that in 1999 he was convicted of compounding and hindering apprehension.

Boyd recalled that in February 2018, he called defendant and asked for a ride to Home Depot to get something. While Boyd described that he was going to pick up heroin, he detailed that he told defendant he needed an item for his house. Boyd testified that while defendant was in the car, he went inside Home Depot and picked up the heroin from a friend. He stated the drugs were in a Home Depot bag and that he returned to the car and placed the bag in the center console. He stated that he never told defendant that the heroin was in the bag.

Boyd stated that he then asked defendant to take him to a Quick Stop convenience store to get a drink, but he really wanted to go there because he wanted to meet with another guy to drop off ten bags of heroin, which he had

6

already removed from the bag. He testified that when they got to the Quick Stop he got out of the car, went to the back of the store and delivered the heroin. He further relayed that when he returned, he saw the police cars, got scared, went behind the building, and left the area.

Boyd testified that he found out through "the streets" that defendant was arrested and two years after the incident, wrote a letter stating defendant had nothing to do with the Home Depot bag and did not know about it's contents. He also wrote that he had asked defendant to drop him off behind the convenience store "to collect something from a friend that was owed to me." He stated that he waited so long to disclose the truth because he didn't want to go to jail, but coming forward was the right thing to do.

Boyd acknowledged on cross-examination that he first stated he owned the heroin two years after the crime. The prosecutor then asked: "And then you also were interviewed by the Public Defender's Office in this case, correct?" Defense counsel asked to be heard at side bar and objected to the jury becoming aware of the reference to the Public Defender's Office. The prosecutor apologized and the rest of the side bar was unable to be transcribed.

When the questioning resumed, the prosecutor cross-examined Boyd about being present that day but only finding out that his cousin was arrested via

7

the "streets." The prosecutor followed up with questioning about when Boyd was interviewed by a defense investigator in August 2022. No further mention of the Public Defender's Office was made.

When the prosecutor started to ask about Boyd's compounding conviction, defense counsel objected to the prosecutor's description. The court heard argument at side bar and allowed the prosecutor to read the accusation and ask Boyd if that is what he pleaded guilty to. The accusation read, "[a]nd you knowingly accepted or agreed to accept a pecuniary benefit of $50 in consideration of refraining from reporting to a law enforcement authority the commission or suspected commission of any offense or information relating to an offense or from seeking prosecution for that offense." The prosecutor also questioned Boyd about his refusal to respond to a detective from the Middlesex County Prosecutor's Office ("MCPO").

On rebuttal, MCPO Detective Nicole Spezio testified that on two occasions she called and spoke to Boyd who stated he was busy and would call her back. He never did. She also stated that she left two messages for him on his voicemail, but he did not call back. Lastly, she went to the residence where Boyd reported he lived but his cousin said he was not currently living there.

At the conclusion of the trial, the jury found defendant guilty of second-degree possession with intent to distribute heroin and one count of third-degree possession of suboxone. He was acquitted of possession of the oxycodone pill.

Defendant was sentenced on October 24, 2023. The court noted that defendant had sixteen previous convictions including possession with intent to distribute and/or distribution of a controlled dangerous substance on five occasions between 1990 and 2020. First, defendant was sentenced to a mandatory extended term as a repeat drug distributor. Second, the court imposed a sentence in the middle of the extended-term range of fifteen-years in State Prison with seven-and-a-half-years of parole ineligibility on count one with a concurrent term of five years flat on count three. A memorializing judgment of conviction was entered that day.

On appeal, defendant raises the following points in his counseled brief:

> POINT I: THE COURT ERRED BY FAILING TO ISSUE A JURY INSTRUCTION OR DECLARE A MISTRIAL WHEN THE PROSECUTION DISCLOSED THAT [DEFENDANT] WAS REPRESENTED BY THE OFFICE OF THE PUBLIC DEFENDER.

> POINT II: THE COURT ERRED BY FAILING TO ISSUE A JURY INSTRUCTION OR DECLARE A MISTRIAL WHEN THE PROSECUTION MISCHARACTERIZED THE DEFENSE WITNESS' PRIOR CRIMINAL CONVICTION AS "LYING".

POINT III: THE COURT ERRED BY FAILING TO SUPPRESS THE EVIDENCE OBTAINED THROUGH SOMERSET COUNTY'S EXTRA-JURISDICTIONAL INVESTIGATION.

POINT IV: THE COURT ERRED BY FAILING TO SUPPRESS THE EVIDENCE OBTAINED PURSUANT TO A COMPLAINT SUMMONS ISSUED WITHOUT THE SIGNATURE OF A JUDICIAL OFFICER.

POINT V: THESE ERRORS TAKEN TOGETHER DEPRIVED [DEFENDANT] OF A FAIR TRIAL.

POINT VI: THE COURT'S SENTENCE WAS MANIFESTLY EXCESSIVE FOR FAILING TO ACCOUNT FOR [DEFENDANTS'] ADDICTION AND DOUBLE COUNTING OF AGGRAVATING FACTORS.

In a supplemental self-represented brief, defendant contends:

POINT I: COMPLAINT SUMMONS FATALLY DEFECTIVE, NO DETERMINATION OF PROBABLE CAUSE AND POLICE OFFICER ISSUED THE COMPLAINT.

POINT II: DEFENDANT CONSTITUTIONAL RIGHTS TO DUE PROCESS HAS BEEN VIOLATED.

POINT III: MIDDLESEX COUNTY COURTS CORRECTED DEFECTIVE IN COMPLAINT WAS ERRORNESS [SIC].

POINT IV: THE MIDDLESEX COUNTY SUPERIOR COURT FAILED TO MAKE A FINDING OF FACTS ON DEFENDANT MOTION.

10

POINT V: MIDDLESEX COUNTY PROSECUTOR OFFICE COMMITTED MISCONDUCT WHEN IT FAILED TO FOLLOW STATE WIDE RULE WAIVER OF MANDATORY MINIMUM SENTENCE.

POINT VI: DEFENDANT WAS DENIED MITIGATING FACTOR 2 AND 11 BY COURT.

POINT VII: SOMERSET COUNTY PROSECUTOR OFFICE DETECTIVES DO NOT HAVE JURISDICTION TO CONDUCT A INVESTIGATIVE DETENTION.

POINT VIII: THE MIDDLESEX COUNTY COURT ORDER MARK A. BAILEY TO FILE A MOTION TO BE RELIEVED.

## II.

We first address defendant's contention the trial court erred by not granting a mistrial or curative instruction based on the prosecutor's reference to the Public Defender's Office. He alleges this error denied him a fair trial because the prosecution presented his financial status, thus, prejudicing the jury by leading them to believe he was facing financial difficulties.

A decision to grant or deny a motion for a mistrial is left to the sound discretion of the trial judge. State v. Smith, 224 N.J. 36, 47 (2016); State v. Jackson, 211 N.J. 394, 407 (2012). "'[A]n appellate court will not disturb a trial court's ruling on a motion for a mistrial, absent an abuse of discretion that results in a manifest injustice.'" Jackson, 211 N.J. at 407 (alteration in original)

11

(quoting State v. Harvey, 151 N.J. 117, 205 (1997)). "The grant of a mistrial is an extraordinary remedy to be exercised only when necessary 'to prevent an obvious failure of justice.'" State v. Yough, 208 N.J. 385, 397 (2011) (quoting Harvey, 151 N.J. at 205). "Of course, declaring a mistrial is never a preferred course." State v. Smith, 471 N.J. Super. 548, 579 (App. Div. 2022). "If there is 'an appropriate alternative course of action,' a mistrial is not a proper exercise of discretion." Smith, 224 N.J. at 47 (quoting State v. Allah, 170 N.J. 269, 281 (2002)). "For example, a curative instruction, a short adjournment or continuance, or some other remedy, may provide a viable alternative to a mistrial, depending on the facts of the case." Ibid.

"The same deferential standard that applies to the mistrial-or-no-mistrial decision applies to review of the curative instruction itself." State v. Herbert, 457 N.J. Super. 490, 503 (App. Div. 2019) (citing State v. Winter, 96 N.J. 640, 647 (1984)). "[A] trial court is in the best position to assess the impact of an evidentiary ruling." Ibid. (citing Crawn v. Campo, 136 N.J. 494, 512 (1994)).

In general, a prosecutor may not elicit testimony concerning a defendant's unemployment to show a tendency or motive to commit a crime for financial gain. See State v. Mathis, 47 N.J. 455, 471-72 (1966); rev'd on other grounds, 403 U.S. 946 (1971). Generally, "there must be something more than poverty

12

to tie a defendant into a criminal milieu." Id. at 472. This prohibition on eliciting testimony of defendant's unemployment is not limited to the questioning of a defendant but applies also to witnesses. State v. Terrell, 359 N.J. Super. 241, 247 (App. Div. 2003).

Our Supreme Court addressed the impact of mentioning that a defendant is represented by the Public Defender's Office in State v. Martini, 131 N.J. 176 (1993), overruled in part as stated in, State v. Wakefield, 190 N.J. 397 (2007). In Martini, on the cross-examination of an expert witness, the witness mentioned that the case was a "Public Defender case." Martini, 131 N.J. at 265. This statement amounted to telling the jury that the defendant was represented by the Public Defender's Office. The court categorized the witness' statement as an "inadvertent remark" which "was brief and non-responsive." Id. at 266. The Court ultimately found that this remark did not result in reversible error. Id. at 266-67.

Our Supreme Court reached a different result in Mathis. In that case, the defendant was accused of murdering a salesman as part of a botched robbery. 47 N.J. at 461. On cross-examination, the prosecution asked defendant how much money he had and when he last worked. Id. at 469. Ultimately, the Court reversed and remanded the matter for a new trial because the State projected

"the forbidden theme that defendant had no apparent means of income and hence was likely to commit a crime for dollar gain. This was improper and injurious." Id. at 472.

Defendant's reliance on Mathis is unpersuasive because that case is distinguishable from the matter before us. Unlike Mathis, in which the prosecutor portrayed the defendant's lack of money as the motivation for the crime, here, the prosecutor's remark did not suggest a monetary motivation for the crimes defendant was charged with. Instead, the prosecutor's remarks were in the context of questioning the witness as to why it took him two years to claim possession of the heroin.

Further, as in Martini, here the prosecutor's remark was inadvertent. Although improper, it was made in a fashion and without further elaboration such that it did not suggest anything about defendant's employment status, let alone suggest a motive for the crime charged. The reference to the Public Defender's Office was immediately objected to by defense counsel and never mentioned to the jury again. In light of the eyewitness testimony of two police officers, the heroin found in defendant's car, and the money found on defendant, we do not conclude that a mere one-time mention of the Public Defender's Office could be capable of influencing the jury's ultimate decision. See State v. Farr,

14

183 N.J. Super. 463, 469, (App. Div. 1982) (finding that a mention of defendant's pecuniary status did not reach dimensions sufficient to alter the jury verdict). The mention of the Public Defender's Office is no doubt harmless error based on the overwhelming evidence in this case. See R. 2:10-2.

## III.

Next, defendant contends the State improperly inquired into the details of Boyd's conviction for compounding. Moreover, he claims the court erred by not declaring a mistrial when the prosecutor mischaracterized the conviction during closing argument. We disagree.

"Traditional rules of appellate review require substantial deference to a trial court's evidentiary rulings." State v. Morton, 155 N.J. 383, 453 (1998). We uphold the trial court's rulings "'absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment.'" State v. Perry, 225 N.J. 222, 233 (2016), as corrected (July 8, 2016) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). "An appellate court applying this standard should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" Ibid. (quoting State v. Marrero, 148 N.J. 469, 484 (1997)); see also State v. Fortin, 189 N.J. 579, 597 (2007). Where there is an abuse of discretion, "we must then determine whether

15

any error found is harmless or requires reversal." State v. Prall, 231 N.J. 567, 581 (2018).

N.J.R.E. 609 provides, in relevant part, that "[f]or the purpose of attacking the credibility of any witness, the witness's conviction of a crime . . . shall be admitted unless excluded by the court pursuant to paragraph (b) of this rule."[1] Our Supreme Court has stated that "[o]ur rules of evidence allow a witness's prior convictions to be admitted for impeachment purposes despite the obvious prejudice that flows from such evidence, particularly for a criminal defendant.

---

[1] N.J.R.E. 609:

(b) Use of Prior Conviction Evidence After Ten Years.

> (2) In determining whether the evidence of a conviction is admissible under subparagraph (b)(1) of this rule, the court may consider:
>
> > (i) whether there are intervening convictions for crimes or offenses, and if so, the number, nature, and seriousness of those crimes or offenses,
> >
> > (ii) whether the conviction involved a crime of dishonesty, lack of veracity or fraud,
> >
> > (iii) how remote the conviction is in time,
> >
> > (iv) the seriousness of the crime.

That said, trial courts retain discretion to prevent the occurrence of undue prejudice from prior-conviction evidence." State v. Hamilton, 193 N.J. 255, 256-57 (2008) (internal citations omitted).

The party seeking to bar the admission of prior-conviction evidence bears the "burden of proof to justify [its] exclusion." State v. Sands, 76 N.J. 127, 144 (1978). Our Court has held that "[e]ven when a prior conviction is admissible, the trial court must determine whether the jury should be shielded nevertheless from the prior convictions details." Hamilton, 193 N.J. at 257. The decision whether to admit such evidence "rests within the sound discretion of the trial judge." Sands, 76 N.J. at 144. Accordingly, we will not disturb a trial judge's decision to admit prior-conviction evidence unless we determine a clear abuse of discretion. State v. Hutson, 211 N.J. Super. 49, 53 (App. Div. 1986), aff'd, 107 N.J. 222 (1987).

Here, on direct testimony defense counsel elicited all of Boyd's previous convictions, including compounding. On cross-examination, the State focused on the compounding conviction, seeking to address the details of it. After an objection, the court allowed the prosecutor to read the accusation. With that ruling, the following exchange took place:

> PROSECUTOR: Now, the Accusation for that says that you "knowingly did accept or agree to accept a

pecuniary benefit of $50 in consideration of refraining reporting to law enforcement authorities the commission or suspected commission of any offense or information relating to an offense or from seeking prosecution for an offense." Does that sound familiar?

BOYD: Yes.

PROSECUTOR: Okay. And so, you were convicted of that?

BOYD: Yes.

The prosecutor then asked Boyd if he previously received money to lie and Boyd replied "No." An objection was raised and the State agreed to move on and did so.

Considering a conviction for compounding centers on a person receiving money to refrain from reporting a crime to law enforcement, this line of questioning was appropriate. Boyd's ability to tell the truth was relevant and was addressed during direct and cross-examination. For example, on direct examination, when asked why he waited so long to write the letter Boyd answered, "I had no clue of how to tell the truth." Subsequently, during cross-examination he stated he "knew how to tell the truth once he wrote the statement," but at the beginning he "did not know how to tell the truth." The court's determination that it was appropriate for the prosecutor to read the formal

18

accusation to the jury because this helped them understand what the crime of "compounding" meant was reasonable and not an abuse of discretion.

It is also alleged by defendant that the conviction of Boyd was improperly characterized by the State in its closing as one involving defrauding the justice system. This occurred after defense counsel in their closing argument lamented that Boyd had no motive for lying. Taken in the context of defendant's credibility, it was logically inferred from Boyd's compounding conviction that something related to the commission of a crime was known by Boyd and he was paid not to reveal it. Prosecutors are "afforded considerable leeway . . . as long as their comments are reasonably related to the scope of the evidence presented." McNeil-Thomas, 238 N.J. at 275. The prosecutor's rebuttal comments about Boyd's credibility were allowed because it addressed the defendant's claim that Boyd had no reason to lie, so there was no need for a mistrial.

Defendant's further contention that the court erred by not providing a jury instruction on the limited use of Boyd's prior criminal conviction lacks merit. "Appropriate and proper jury instructions are essential for a fair trial." State v. A.L.A., 251 N.J. 580, 591 (2022). A jury charge must "'correctly state the applicable law, outline the jury's function and be clear in how the jury should

apply the legal principles charged to the facts of the case at hand.'" Id. at 591-92 (quoting Est. of Kotsovska v. Liebman, 221 N.J. 568, 591 (2015)).

During the jury charge, the court provided instructions on how the jurors were to use the prior convictions. Specifically, the following instruction as to Boyd's testimony was provided:

> You have heard evidence that Markeye Boyd, the defense witness, has previously been convicted of crimes. This evidence may only be used in determining credibility or believability of his testimony. The jury has a right to consider whether a person who has previously failed to comply with society's rules has demonstrated, through criminal convictions, that he would more likely -- that he is more likely to ignore the oath requiring truthfulness on the stand than a person who has never been convicted of a crime.
>
> You may consider in determining this issue the nature and degree of the prior convictions and when they occurred. You are not, however, obligated to change your opinion as to the credibility of this witness simply because of prior convictions. You may consider such evidence, along with all other factors I previously discussed with you here, in determining the credibility of a witness.

This detailed jury charge explained how the jury should consider Boyd's prior convictions. As such, this argument is without merit.

A-1039-23

IV.

We turn next to defendant's contention that the trial court erred in not granting his suppression motion. First, defendant argues that because the SCPO arrested him outside of Somerset County his constitutional rights were violated, and the ensuing consent search of his wife's car was illegal. Next, he contends the court erred by failing to suppress evidence that was obtained in connection with his arrest when he was taken to the police station and issued a defective complaint-summons.

Our review of a trial court's decision on a motion to suppress evidence is circumscribed. See State v. Miranda, 253 N.J. 461, 474 (2023). After a testimonial hearing, we "defer to the trial court's factual findings because the trial court has the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. S.S., 229 N.J. 360, 374 (2017) (quoting State v. Elders, 192 N.J. 224, 244 (2007)); see also State v. Locurto, 157 N.J. 463, 474 (1999) (recognizing deference is afforded because the court's findings "are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record"). Therefore, we "must defer to the factual findings of the trial court on a motion to suppress so long as its

A-1039-23

findings are supported by sufficient credible evidence in the record." State v. Erazo, 254 N.J. 277, 297 (2023). Our deference includes the trial court's findings based on video-recorded or documentary evidence. See S.S., 229 N.J. at 374-81 (clarifying the deferential and limited scope of appellate review of factual findings based on video-recorded evidence); see also State v. Tillery, 238 N.J. 293, 314 (2019); State v. McNeil-Thomas, 238 N.J. 256, 271-72 (2019). "A trial court's legal conclusions, 'however, and the consequences that flow from established facts,' are reviewed de novo." State v. Bullock, 253 N.J. 512, 532 (2023) (quoting State v. Hubbard, 222 N.J. 249, 263 (2015)).

A.

The Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution protect citizens against unreasonable searches and seizures and requires a showing of probable cause prior to an arrest or the issuance of a warrant. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. The standards for determining probable cause to arrest and probable cause to search are functionally equivalent. State v. Smith, 155 N.J. 83, 92 (1998). Our Supreme Court has stated that the probable cause standard "is not susceptible of precise definition." State v. Moore, 181 N.J. 40, 45 (2004) (citing State v. Wilson, 178 N.J. 7, 13 (2003)). Nevertheless, the Court has consistently held

that "a principal component of the probable cause standard 'is a well-grounded suspicion that a crime has been or is being committed.'" Ibid. (quoting State v. Nishina, 175 N.J. 502, 515 (2003)).

Given the flexible nature of probable cause, our courts have adopted the totality of the circumstances test set forth by the United States Supreme Court in Illinois v. Gates, 462 U.S. 213, 238 (1983). Id. at 46. An informant's tip— though hearsay—may be considered "'so long as a substantial basis for crediting [it] is presented.'" Smith, 155 N.J. at 92 (quoting State v. Novembrino, 105 N.J. 95, 111 (1987)). Two factors which are "essential" in establishing the credibility of an informant's tip are the "informant's 'veracity' and . . . 'basis of knowledge.'" Id. at 93 (quoting Gates, 462 U.S. at 238). Veracity is established by "demonstrating that the informant proved to be reliable in previous police investigations." State v. Sullivan, 169 N.J. 204, 213 (2001). An informant's basis of knowledge is demonstrated when "the tip itself relates expressly or clearly how the informant knows of the criminal activity." Ibid. (internal quotation marks and citation omitted). The Sullivan Court stated that because the information in a tip is hearsay, "police corroboration of that information is an essential part of the determination of probable cause." Ibid. (internal quotation marks and citation omitted). The degree of corroboration necessary

for a finding of probable cause "depends on a qualitative analysis of 'the unique facts and circumstances presented in each case.'" State v. Keyes, 184 N.J. 541, 556 (2005) (quoting State v. Jones, 179 N.J. 377, 390 (2004)). And, although one factor may be insufficient to support probable cause "if considered in isolation," all the factors considered together may "reinforce or augment one another and become sufficient to demonstrate probable cause." State v. Zutic, 155 N.J. 103, 113 (1998) (citing Gates, 462 U.S. at 233).

Based on the totality of the circumstances, the detectives had probable cause to believe that defendant was in possession of a quantity of heroin when he was detained. First, the CI was credible as the officers established the CI's veracity by indicating that they provided information that led to other arrests. Additionally, the CI gave law enforcement defendant's name and then set up a controlled buy with him that was witnessed by law enforcement. The CI's basis of knowledge was established because he was present for the first transaction, where defendant sold heroin to him that was turned over to the detectives. Furthermore, the CI provided the detectives with accurate information regarding this second meeting. He predicted defendant would drive to the particular strip mall, during a certain time period, and that he would be in possession of a large amount of heroin.

A-1039-23

Moreover, each of the detectives involved in defendant's arrest possessed significant experience investigating and prosecuting narcotic offenses. The detectives confirmed defendant's identity by matching it to his driver's license photo and observed defendant's actions at the strip mall which also contributed to probable cause. At this point, the detectives approached defendant and detained him. Taken alone, one of these behavioral factors might not demonstrate probable cause; however, when combined with all of the information, including the accuracy of the informant's tip, we are satisfied that, under the totality of the circumstances, they "reinforce . . . one another and become sufficient to demonstrate probable cause." Zutic, 155 N.J. at 113 (citing Gates, 462 U.S. at 233). As stated, probable cause only requires "a fair probability" of criminality. Johnson, 171 N.J. 192, 214 (2002). Probable cause had been established when defendant was placed into custody at the shopping center.

B.

Defendant contends the SCPO could not obtain his consent to search in Middlesex County because it occurred beyond their jurisdiction. We are not persuaded by that argument.

25

N.J.S.A. 2A:157-2.1 states that "any full-time, permanently appointed county detective, sheriff's officer and investigator sheriff's office shall have full power of arrest for any crime committed in his presence anywhere within the territorial limits of the State of New Jersey." Because the detectives had probable cause to arrest defendant, they did not exceed the authority given to them by the Legislature when they asked him for consent.

Defendant also relies on State v. White, 305 N.J. Super. 322, 324 (1997), for the proposition that despite his arrest, SCPO detectives did not have jurisdiction to conduct surveillance, detention, or an investigation in Middlesex County. In White, officers from the City of Orange Police Department were investigating a burglary which led them to a suspect. Id. at 325. The suspect was arrested and gave a statement in which he named White as someone who purchased stolen property from him. Ibid. Based on the suspect's statements, police proceeded to White's residence in Newark where White's mother ultimately consented to a search of the residence which resulted in the seizure of several items suspected of being stolen. Id. at 325-26. White was later arrested and argued that the officers lacked statutory authority to investigate and seize property outside of their jurisdiction. Id. at 326. Our [c]ourt rejected White's argument stating "[o]ur reading of the relevant statutes satisfies us that

26

the Legislature contemplated that police officers may at times be called upon to go beyond the boundaries of their municipality in the performance of their official duties." Id. at 327. Here, in addition to the probable cause, the SCPO notified South Plainfield Police of the investigation in their jurisdiction, as White recommends.

Our determination is fully consistent with the decisions of this court. State v. Gadsden, 303 N.J. Super 491, 503-04 (App. Div. 1997) (holding that a violation of the statutes addressing jurisdiction of municipal police is "a procedural or technical" defect, not an infringement of a constitutional right warranting suppression of evidence).

C.

Next, defendant asserts that because the complaint was not signed the evidence should have been suppressed. Whether or not the complaint-summons was unsigned or flawed in any respect is entirely irrelevant to the seizure of property from the car. First, the issuing of the summons occurred after the seizure of the evidence. Second, any deficiency in the summons was superseded by the indictment and had no bearing on the charges to which defendant was convicted. See State v. Boykin, 113 N.J. Super. 594, 596 (Law Div. 1971) (noting that even after dismissal of a complaint, a defendant "may still be

A-1039-23

indicted and convicted for the same offense").  Finally, there was no evidence seized from defendant after he was taken to the police department, issued the summons, and released.

V.

Defendant also alleges that the cumulative effect of the judicial rulings led to an unfair result.  Cumulative error is "where any one of several errors assigned would not in itself be sufficient to warrant a reversal, yet if all of them taken together justify the conclusion that defendant was not accorded a fair trial, it becomes the duty of this court to reverse."  State v. Orecchio, 16 N.J. 125, 134 (1954).  However, when a "defendant alleges multiple trial errors, the theory of cumulative error will . . . not apply where no error was prejudicial[,] and the trial was fair."  State v. Weaver, 219 N.J. 131, 155 (2014).  Here, none of alleged errors, raised by defendant had the cumulative effect of rendering the underlying trial unfair.

VI.

We next turn to defendant's argument that his sentence was manifestly excessive.  We review sentencing determinations in accordance with a deferential standard.  State v. Fuentes, 217 N.J. 57, 70 (2014).  We must not

substitute our judgment for that of the sentencing court. State v. O'Donnell, 117 N.J. 210, 215 (1989). Accordingly, the sentence must be affirmed unless:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Fuentes, 217 N.J. at 70 (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Stated another way, we may modify a defendant's sentence only when convinced that the sentencing judge was clearly mistaken. State v. Johnson, 118 N.J. 10, 15 (1990); State v. Jabbour, 118 N.J. 1, 6 (1990).

At sentencing, the trial court reviewed defendant's pre-sentence report as well as multiple letters from him and others on his behalf. It noted, defendant was sixty-one years old and over the last forty-five years had eleven municipal court convictions, numerous indictable convictions: twelve that were drug related; four for burglary; and two for receiving stolen property. The court, by noting defendant had completed various substance abuse treatments in 1987, 1993 and three times in 2001, highlighted that he had chances to address his substance abuse issues.

29

At sentencing, the court first determined that defendant should be sentenced to an extended term pursuant to N.J.S.A. 2C:43-6(f) and 2C:43-7. Then, the court found aggravating factors three, six, and nine. Factor three is the risk that defendant will commit another offense, N.J.S.A 2C:44-1(a)(3); factor six is defendant's prior criminal history, N.J.S.A 2C:44-1(a)(6); and factor nine is the need for deterring defendant and others from violating the law, N.J.S.A 2C:44-1(a)(9). The court found no mitigating factors but found a non-statutory mitigating factor of defendant's lack of availability of recovery court. The court was clearly convinced the aggravating factors substantially outweighed the mitigating consideration.

Defendant does not contest the finding of the aggravating factors, but claims there are two mitigating factors that should have been found by the court: that he did not contemplate that his conduct would cause serious harm, N.J.S.A 2C:44-1(b)(2); and that his imprisonment would entail excessive hardship to the defendant or the defendant's dependents, N.J.S.A. 2C:44-1(b)(11).

We agree with the trial court that defendant was not entitled to any mitigating factors. In regard to mitigating factor two, we have noted that "[d]istribution of cocaine can be readily perceived to constitute conduct which causes and threatens serious harm." State v. Tarver, 272 N.J. Super. 414, 435

(App. Div. 1994). We also agree with the trial court, who heard from defendant's family members, that imprisonment would not be an excessive hardship to his dependents given his wife's job and his older children's ability to help with his younger child. The record here does not reveal any improper exercise of discretion by the trial court in finding and weighing the aggravating and mitigating factors.

Defendant also argues that the sentence failed to account for defendant's addiction. This is belied by the record. The sentencing court noted that defendant had multiple opportunities at substance abuse treatment but continued to squander those opportunities. Moreover, the court gave defendant the benefit of recognizing "the power and influence of addiction" but gave it minimal weight. We are satisfied the trial court thoroughly analyzed defendant's record and his prospects for rehabilitation and did not abuse its discretion.

Defendant also contends the court impermissibly "double counted" his prior drug convictions when using them to impose an extended term and by applying the prior convictions to find aggravating factors. We rejected a similar argument in State v. McDuffie, 450 N.J. Super. 554, 574-76 (App. Div. 2017), where "we reject[ed], as lacking merit, [the defendant's] claim the [trial] court impermissibly double-counted his criminal record, when granting the State's

motion for a discretionary extended term, and again, when imposing aggravating factor six, which considers the extent and seriousness of defendant's prior record." Although we acknowledged "'[f]acts that establish[] elements of a crime for which a defendant is being sentenced should not be considered as aggravating circumstances in determining that sentence,'" we distinguished the defendant's case from this legal principle as "[the defendant's] criminal history was not a 'fact' that was a necessary element of an offense for which he was being sentenced." Id. at 576. (second alteration in original) (quoting State v. Kromphold, 162 N.J. 345, 353 (2000)).

Defendant's reliance on our decision in State v. Vasquez, 374 N.J. Super 252 (App. Div. 2005), is misplaced. Vasquez addressed distinct factual and legal issues and cannot be read to undermine the principles established in McDuffie. See Vasquez, 374 N.J. Super at 267 ("[F]actors invoked by the Legislature to establish the degree of the crime should not be double counted when calculating the length of the sentence." (alteration in original) (quoting State v. Miller, 108 N.J. 112, 122 (1987))). Defendant's prior drug convictions were not elements of the crimes for which he was convicted, nor were these prior convictions used to establish the degree of those crimes. As such, defendant's "double counting" argument is unavailing.

32

Lastly, defendant contends the prosecutor violated Attorney General Law Enforcement Directive No. 2021-4 by not waiving the mandatory minimum sentence. This directive "establishes statewide rules that require prosecutors to seek the waiver of mandatory parole disqualifiers for non-violent drug crimes during plea negotiations, following a probation violation, and after conviction at trial." See State v. Arroyo-Nunez, 470 N.J. Super. 351, 360 (App. Div. 2022) (noting Directive 2021-4 was implemented to end the imposition of mandatory parole ineligibility for non-violent drug crimes). One such "non-violent drug crime" listed in Directive 2021-4 is N.J.S.A. 2C:35-5, possession of a controlled dangerous substance with intent to distribute.

Directive 2021-4 does not prohibit a prosecutor from seeking a mandatory extended term pursuant to N.J.S.A. 2C:43-6(f). However, it requires that when a defendant is convicted at trial of an offense subject to N.J.S.A. 2C:43-6(f), the prosecutor shall allow the defendant to enter into an agreement containing the following term, "[p]ursuant to Section 12, the court at sentencing shall impose a period of parole ineligibility for any qualifying Chapter 35 offense equal to

one-third of the original sentence, less commutation, minimum custody and work credits . . .."[2]

Although the prosecutor permissibly moved for a mandatory extended term, the prosecutor did not offer any agreement here. Subsequently, defendant was sentenced pursuant to N.J.S.A. 2C:43-6(f) to a period of seven-and-a-half years of parole ineligibility, equal to fifty percent of his sentence, more than the five-years (one-third) contemplated by the Directive.

However, our analysis does not end there, since in addition to the one-third period of parole ineligibility the prosecutor is required to seek under 2C:43-6(f), the Directive allows for the court to "retain discretion to impose an additional discretionary period of parole ineligibility under N.J.S.A. 2C:43-6(b) if the court is clearly convinced the aggravating factors substantially outweigh the mitigating factors."

Since we have already determined that the court's weighing of the aggravating and mitigating factors was well within its discretion, we do not remand for a new sentencing hearing. See State v. Tavares, 286 N.J. Super 610 (App. Div. 1996). Rather, because the prosecutor should have moved for

---

[2] Section 12 refers to N.J.S.A. 2C:35-12 which allows the parties to enter into an agreement, before or after conviction, that provides for a shorter period of parole ineligibility, among other possible sentence modifications.

A-1039-23

defendant to be sentenced to a period of parole ineligibility (five-years) on the mandatory extended term portion, we remand for the trial court to clarify whether an additional discretionary parole ineligibility term under N.J.S.A. 2C:43-6(b), was warranted in addition to the five-year parole ineligibility sentence under N.J.S.A. 2C:43-6(f). We also direct that the judgment of conviction be amended to reflect that defendant's five-years of parole ineligibility is less commutation, minimum custody and work credits.

Finally, to the extent we have not addressed an argument raised on the appeal, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in part, remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Hawley*

Clerk of the Appellate Division